James H. **BUTLER**, Appellant,

v.

L. H. (Bud) **HANSON**, Appellee.

No. 5919.

Court of Civil Appeals of Texas.

El Paso.

Sept. 25, 1968.

Rehearing Denied Oct. 16, 1968.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Durward M. Goolsby, Milton L. Bankston, Midland, for appellant.

Guilford L. Jones, Richard C. Milstead, Big Spring, for appellee.

## OPINION

FRASER, Chief Justice.

James H. Butler, the record owner of a 157.22-acre tract of land in Glasscock County, Texas, brought this suit as plaintiff in

an action in trespass to try title, against L. H. (Bud) Hanson, defendant. Mr. Hanson, by way of answer and cross-action, made claim to the entire acreage by virtue of adverse possession.

Trial of the cause was to a jury and, on the basis of the jury's answers to the questions submitted to it, the court entered a judgment awarding the acreage in controversy to Mr. Hanson, which had the effect of divesting title from the record owner of the property. The plaintiff-appellant, Butler, perfected his appeal to this court.

Mr. Butler was the record owner of the title to the surface estate in and to Section 3, Block 35, T–4–S, Glasscock County, Texas, having obtained the property by a deed from the W. C. Nunn family. L. H. (Bud) Hanson is the record owner of Section 46, Block 35, T–3–S, Glasscock County, Texas, having acquired his title to his land by deed from his parents, Mr. and Mrs. Will Hanson. The land in controversy consists of a 157.22-acre tract out of the North Half of Section 3, as shown on the plat of that land. The result of a survey,

PLAT
OF
A SURVEY OF SECTION 3, BLOCK 35, TSP-4-SOUTH, T & P. R.R. CO. SURVEYS, GLASSCOCK COUNTY, TEXAS.

which the jury found to be correct, shows that the south boundary line of Hanson's Section 46 coincides with the north boundary line of Butler's Section 3. However, as is evident from the plat, there is a diagonal fence crossing Butler's Section 3 which places the 157.22-acre tract within Hanson's ranch fences. We will refer to this parcel of land as the tract in controversy throughout this opinion.

Appellant has briefed eight points of error in which he maintains that Mr. Hanson did not have title by adverse possession and that the court erred in rendering judgment to that effect, on the ground that there is insufficient evidence to support a "claim of right" asserted by Hanson.

The record reveals that the diagonal fence, which Butler asserts cuts off the tract in controversy from his record title, has been in position for more than 30 or 40 years. Hanson testified that he and his father changed or rebuilt the entire diagonal fence sometime in the "30's". He testified that it had been a three-strand barbed wire fence, and that he, his father and other relatives converted it to a net wire fence with two barbed wire strands at the top, and that somewhere in the neighborhood of 1950 or 1952, he again repaired the fence by putting new posts between the old posts. There is no evidence of any gates or entrances in said fence, so the tract in question lies entirely within what is known as the Hanson ranch; and there is evidence by long-time residents that this tract had always been considered as a part of the Hanson ranch. Hanson bases his claim on the fact that the tract in question has been within his ranch fences (and it might be noted here that the diagonal fence is attached to regular ranch fences of the Hanson ranch) for many, many years and, therefore, he claims title by adverse possession under the 10-year statute.

Appellant Butler maintains that Hanson did not acquire this property by adverse possession because it was used only for casual grazing by Hanson's stock, and that Hanson had never improved the tract or put in any water troughs or additions or improvements of any kind.

Appellant bases his position largely on the cases of Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781, and on Dingman v. Spengler, Tex.Civ.App., 371 S.W.2d 416 (n. r. e.). However, we feel there is a difference and a distinction between those cases and the case before us. In the Orsborn case the court repeatedly referred to and pointed out that the land enclosed and the fence so enclosing it must be designedly enclosed to show an assertion of claim hostile to the true owner. The court further points out that a claim of right cannot be substantiated by a fence that casually or incidentally encloses the disputed tract and especially where the character of use of the enclosed land by a claimant of adverse possession is not such as to constitute of itself an actual and visible appropriation of the land. Such use cannot be aided by a fence which casually created the enclosure. In the case before us, we are confronted with the fact that while the Hanson stock was free to casually graze on the disputed tract, it had to return to another Hanson section for water. However, we believe that this state of facts is sufficient when taken in connection with the further fact that the fence in question here was by no means a casual, or incidental, fence. It was rebuilt and repaired and maintained by Hanson, and was a part of his own system of ranch fencing. This case is distinguished from the Dingman case, also, because in the Dingman case, while the casual grazing situation was the same as here, the fencing was considered to be casual as it was not entirely fenced, and a great part of one side was simply the right of way of the railroad and highway, and not a fence constituted and maintained by the claimant.

The tract in question here has been under Hanson fencing for much longer than the 10-year statute requires. The diagonal fence shown on the plat separating the tract in question from the rest of the

Butler section, if not built by, was certainly rebuilt by the Hansons in the 30's and substantially repaired by Mr. Hanson himself somewhere around 1950 or 1952. It cannot be said that this diagonal fence was in any sense a casual or incidental fence. We also believe that the fence, being rebuilt and maintained as it was through the many years, preventing access of stock from the lower or southern part of the Butler section to grass in or on the tract in question, was open, hostile and obvious to Mr. Butler and his predecessors in title and anyone else on the premises. It is not contended that there was ever any verbal declaration by Mr. Hanson to Mr. Butler that he was claiming this tract, but we feel that the fence, rebuilt and maintained as it was by Mr. Hanson, was notice and evidence enough to indicate that he was using the property for his own purposes within his own ranch. He testified that he claimed all of the land within his fences and had always done so.

It should be noted, too, in considering the distinction between the Orsborn case and the one before us that there was a 60-acre tract owned by the State of Texas within the enclosure in question in the Orsborn case against which, of course, no claim was made. In the Orsborn case the court seems to lay particular emphasis on the existence of the 60-acre tract belonging to the State of Texas enclosed within the larger fenced area, and the fact that cattle on the deeded land could not reach the disputed area without going across the tract owned by the State. Also, in distinguishing the Dingman case, it must be noted that owners of the pieces of property on each side of the highway knowingly used each other's land by virtue of an understanding of convenience; hence, the possession was not adverse.

■ Appellee cites the case of Wynn v. Mendoza, Tex.Civ.App., 287 S.W.2d 217 (wr. ref., n. r. e.), as an example of an incidental or casual fencing, in that the predecessor to the claimant had tied a fence to the railroad right of way on one end, and to the fence of a third party on the other. This case holds that such is a "casual fence". Also, in Wilson v. Rogers, 343 S.W.2d 309 (Tex.Civ.App., n. r. e.), the court points out that in determining whether a fence is or is not a casual fence, it must be determined by looking at the whole pattern of fencing and the use made of the fences. To the same effect is Harris v. Strawbridge, 330 S.W.2d 911 (Tex.Civ. App., n. r. e.). Appellee cites other cases to refute appellant's position that the tract in question was not entirely fenced. In other words, there was no fence between the top, or north of Section 3, and the south of Section 46. These cases point out that the disputed tract does not necessarily have to be separately enclosed from all other lands. Lone Star Steel Company v. Owens, Tex.Civ.App., 302 S.W.2d 213 (wr. ref., n. r. e.); Houston Oil Co. of Texas v. Skeeler, Tex.Civ.App., 178 S.W.2d 740 (wr. ref., n. r. e.). These cases clearly point out that the tract in question does not have to be completely separated by the adverse claimant's fence

■ Appellant strongly urges that appellee did not knowingly claim any part of Section 3. This is based on the fact that Hanson testified that he claimed all the land within his fences and did not know or believe that any part of Section 3 had been and was within his fence. As long as the adverse claimant was using the land and maintaining a fence of the nature present here, we do not feel it was necessary for him to have absolute knowledge that the claimed tract had been a part of Section 3. Catching v. Bogart, Tex.Civ.App., 138 S. W.2d 245 (wr. ref.); Pasha v. Schell, Tex. Civ.App., 229 S.W.2d 818 (wr. ref.); Gleckler v. Denton, Tex.Civ.App., 149 S.W. 2d 213; Payne v. Priddy, Tex.Civ.App., 371 S.W.2d 783 (n. w. h.); Chittim v. Auld, Tex.Civ.App., 219 S.W.2d 702 (wr. ref., n. r. e.); Liles v. Sawyer, Tex.Civ.App., 257 S.W.2d 512 (n. w. h.). On the basis of the cases cited above, we do not believe that the fact that Mr. Hanson did not know

the exact location of the south boundary line of Section 46 and was mistaken when he believed that the disputed tract enclosed by his fence was covered in the deed from his father, can or should defeat his valid claim of limitations under the 10-year statute. Appellee further points out in this connection that the jury found, in answer to Special Issue No. 11, that appellant had the means of readily ascertaining Hanson's claim of right to the land in controversy.

Appellant contends that the court did not submit a proper definition of "claim of right". The actual definition of claim of right given by the court was as follows: "By 'claim of right', as that expression is here used, is meant a claim with the intent to claim the land as his own, and to hold it for himself." We think this definition by the court is adequate under the circumstances, and the appellant's point pertaining thereto is therefore overruled.

Appellee has asked that we reform the judgment to omit approximately 7.34 acres outside the fence in question. We do not feel, because of the jury verdict, that we have the power to take such action, and appellee's request must therefore be refused.

In summation, it will be noted that the tract in question was used and occupied for 30 or 40 years by appellee and his predecessors in title; that it was separated from the land of appellant by a regular ranch fence, rebuilt and repaired by appellee, such fence being attached to other ranch fences of appellee and not to any fence or object belonging to any third party; and while the use of said land was apparently casual grazing of the Hanson stock, we feel, nevertheless, that the fence, rebuilt and maintained as it was by appellee, was sufficient, open, adverse, hostile and obvious evidence that appellee was using and claiming the tract in question, and had brought himself under the provisions of the 10-year statute of limitations.

For the above reasons appellant's points are accordingly overruled and the decision of the trial court affirmed. As hereinbefore stated, the request for reformation of the judgment by appellee must be denied.